UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| JENNIFER DENISE QUIAMBAO | CIVIL ACTION NO. 05-1170-M |
| VS. | SECTION P |
| JOHNNIE JONES, WARDEN | JUDGE JAMES |
| | MAGISTRATE JUDGE HAYES |

## REPORT RECOMMENDING DISMISSAL OF SOME BUT NOT ALL OF PETITIONER'S CLAIMS FOR *HABEAS CORPUS* RELIEF

Before the court is the petition for writ of *habeas corpus* (28 U.S.C. §2254) filed by *pro se* petitioner Jennifer Denise Quiambao on June 24, 2005.[1] Petitioner is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. She is incarcerated at the Louisiana Correctional Institute for Women at St. Gabriel, Louisiana where she is serving the twenty year sentence imposed following her December, 2001 conviction for manslaughter in the Fourth Judicial District Court, Ouachita Parish.

This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

## STATEMENT OF THE CASE

The petition, accompanying memorandum of law, and exhibits, along with the published

---

[1] The "mailbox rule" provides that a prisoner's federal pleadings should be considered to have been filed as of the date the pleadings were presented to the prison authorities for mailing. See *Houston v. Lack*, 487 U.S. 266, 270-71, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). Plaintiff signed her pleadings on June 24, 2005. It is assumed that this was the date that petitioner presented her pleadings to the authorities for mailing.

1

jurisprudence of the State of Louisiana establish the following relevant facts:

### 1. Pre-trial and Trial Proceedings

On December 13, 1999, the Ouachita Parish Grand Jury indicted petitioner on a charge of manslaughter. [Doc. 1, Exhibit H, Bill of Indictment]  On August 31, 2001, she was found guilty as charged following trial by jury in the Fourth Judicial District Court. [Doc. 1-2, p. 11]  On December 17, 2001 petitioner was sentenced to serve twenty years at hard labor.  Her motion for reconsideration of sentence was denied.  [Doc. 1-1, paragraph 3(b); Doc. 1 Exhibit A]

### 2. Direct Appeal

Petitioner appealed arguing five assignments of error: (1) insufficiency of evidence; (2) trial court erred when it admitted other crimes evidence; (3) trial court erred when it denied Motion for New Trial; (4) excessiveness of sentence; and (5) trial court erred in denying the Motion to Reconsider Sentence. [Doc.1 Exhibits B and C]  On December 11, 2002, petitioner's conviction and sentence were affirmed by the Second Circuit Court of Appeals. *State of Louisiana v. Jennifer Denise Quiambao*, 36,587 (La. App. 2d Cir. 12/11/2002), 833 So.2d 1103.; see also Slip Opinion, Doc. 1 Exhibit E]  On or about December 19, 2002 petitioner filed a motion for rehearing. [Doc. 1, Exhibit F]  On January 23, 2003, rehearing was denied. [Doc. 1 Exhibit G]

On February 13, 2003, petitioner filed an Application for Writ of *Certiorari* or Review in the Louisiana Supreme Court.  This writ application asserted a single assignment of error, "The trial court committed reversible error in admitting evidence of other crimes under L.C.E. Art. 404(B) in this involuntary manslaughter case in which specific intent is not an element of the crime." [Doc.1 Exhibit H]  On May 16, 2003, petitioner's writ application was denied. See *State*

*of Louisiana v. Jennifer Denise Quiambao*, 2003-0477 (La. 5/16/2003), 843 So.2d 1130.

### 3. Post-Conviction Proceedings – Production of Documents

On June 30, 2003, petitioner filed a "Motion for the Production of Public Documents" in the Fourth Judicial District Court. She requested free copies of the preliminary hearing transcripts, jury voir dire, opening arguments, trial transcripts, closing arguments, the trial court's jury charge, and the sentencing transcript stating her particularized need for these documents as follows, "Petitioner claims that there were a number of errors made during the proceedings against her that were prejudicial to her defense. [citation omitted] Petitioner does not and cannot remember all these errors accurately without a review of the requested documents." [Exhibit I] This motion was apparently denied by the trial court because on or about July 31, 2003 petitioner filed an Application for Supervisory Writs in the Second Circuit Court of Appeals. Therein she reiterated her desire for the transcripts and other documents and again stated her particularized need as is set forth above. [Exhibit J] On September 18, 2003, the Second Circuit Court of Appeals determined that petitioner had not the requisite showing of a particularized need and therefore denied her application for writs. The court did note that petitioner was entitled to other documents (none of which were the subject of her Motion for Production) and ordered their production "...as determined applicable to this applicant..." See *State of Louisiana v. Jennifer Denise Quiambao*, No. 38051-KH (La. App. 2d Cir. 9/18/2003). [Exhibit K] Sometime after December 8, 2003, petitioner's family purchased a copy of the trial transcript from the Ouachita Parish Clerk of Court. [Exhibit M, at p. 9]

### 4. Application for Post-Conviction Relief

On or about May 12, 2004, petitioner filed an Application for Post-Conviction Relief in

the Fourth Judicial District Court raising ten claims for relief.

In Claim I Petitioner argued that she was denied her rights to effective assistance of appellate counsel, judicial review, due process, and appropriate punishment due to the incompleteness of the record of her case on appeal. She noted various deficiencies in the court record and argued that portions omitted were crucial to her success on appeal. [Exhibit M, pp. 5-9]

In Claim II she claimed that she was indicted by an unconstitutionally composed grand jury in which the trial court lacked jurisdiction to bring petitioner to trial. [id., pp. 10-17]

In Claim II-A she maintained that her constitutional rights under the Sixth and Fourteenth Amendments were violated when the Louisiana District Court unconstitutionally selected the foreperson from the grand jury venire before the remaining members of the grand jury were chosen by lot, La. C.Cr.P. art. 413(B). [id., pp. 18-20]

In Claim II-B she argued that she was constructively denied her Sixth Amendment Right to effective assistance of counsel and her Fourteenth Amendment Right to Due Process of Law when she was denied representation in her defense by qualified counsel during the time that the indictment proceedings were held regarding the charge lodged against her by the State of Louisiana, and thus, she was prevented from timely filing a motion to quash the indictment based upon the grand jury problems noted above. [id., pp. 21-22]

In Claim III she argued that she was denied effective assistance of counsel and denied her right to a fair trial and her right to due process of law. She claimed that her court-appointed counsel failed to investigate and prepare a defense. Specifically she argued that counsel failed to investigate an alleged prior stabbing by the defendant of her victim. Further, counsel, she argued,

did not pursue a not guilty by reason of insanity defense based upon "Battered Woman's Syndrome." She also argued that counsel failed to prepare witnesses and failed to call witnesses at trial. She argued that counsel did not adequately prepare or present her defense of self defense. She also argued that counsel refused to allow her the right to testify in her own defense and that had she been so permitted, she would have testified that her victim "walked around for several minutes after he was stabbed." This, she claimed, "would have explained the large amount of blood at the crime scene." [id. pp. 23-30]

In Claim IV she argued that she was denied effective assistance of counsel and denied her right to due process, to confront and cross-examine witnesses and to a fair trial by a fair and impartial jury. In this claim she argued that on October 8, 2001, the jury foreman wrote a letter to the trial judge complaining of juror misconduct. [See Exhibit L] Her attorney then filed a Motion for a New Trial; however, after a hearing convened on December 17, 2001, the motion was denied. She faults her attorney for not investigating and questioning all of the jurors. She claims that the refusal to allow the jurors a "smoke break" following their lunch during deliberation created an extraneous influence on the jurors which resulted in the guilty verdict. [id., pp. 31-33]

In Claim V she claimed that she was denied the right to effective assistance of counsel on appeal when counsel argued some but not all of the claims raised on appeal in her writ application to the Louisiana Supreme Court. [id., p. 34]

In Claim VI she maintained that the State did not reveal all the exculpatory material that should have been provided to the defense. She claimed that when she obtained the District Attorney's file through a public records request, several witness statements, crime scene photos

5

and the 911 transcript were missing. She claims that had she had this evidence the result of the trial would have been different. [id., p. 35]

In Claim VII she claim again that she was denied the right to due process and to a fair trial when the State was permitted to introduce prejudicial "other crimes evidence." [id., pp. 36-37]

Finally, in Claim VIII she argued that the cumulative effect of the errors deprived her of her right to a fair trial with a reliable verdict. [id., pp. 38-39]

On June 14, 2004, petitioner's Application for Post-Conviction Relief was denied. [Exhibit N] On June 30, 2004, petitioner filed a Notice of Intent to Seek Writs and requested the trial court to set a return date. [Exhibit O]

Thereafter, on July 12, 2004, petitioner submitted her writ application to the Second Circuit Court of Appeals. [Exhibit P] In this pleading, petitioner argued claims identical to those raised in her application for post-conviction relief. On August 12, 2004, the Second Circuit denied writs and sent notice of judgment to the petitioner. See *State of Louisiana v. Jennifer Denise Quiambao*, No. 39237-KH (La. App. 2d Cir. 8/12/2004). [Exhibit Q.]

On September 14, 2004, petitioner filed an Application for Writs in the Louisiana Supreme Court raising nine Assignments of Error or claims for relief.

In Claim I, petitioner argued that her equal protection rights were violated by the grand jury foreperson selection process. [Exhibit S, pp. 5-14]

In Claim II petitioner argued that she was denied assistance of counsel and due process when she was denied representation during the time that "the indictment proceedings were held." As a consequence, she was not able to file a timely motion to quash the grand jury which indicted

her based upon equal protection grounds. [id., pp. 15-16]

In Claim III petitioner argued that she was denied effective assistance of counsel because her court appointed attorney failed to investigate and prepare a defense. Specifically she argued that counsel failed to investigate an alleged prior stabbing by the defendant of her victim. Further, counsel, she argued, did not pursue a not guilty by reason of insanity defense based upon "Battered Woman's Syndrome." She also argued that counsel failed to prepare witnesses and failed to call witnesses at trial. She argued that counsel did not adequately prepare or present her defense of self defense. She also argued that counsel refused to allow her the right to testify in her own defense and that had she been so permitted, she would have testified that her victim "walked around for several minutes after he was stabbed." This, she claimed, "would have explained the large amount of blood at the crime scene." [id. , pp. 17-25]

In Claim IV she again claimed ineffective assistance of counsel and the denial of her right to confront and cross-examine witnesses. In this claim she argued that on October 8, 2001, the jury foreman wrote a letter to the trial judge complaining of juror misconduct. [See Exhibit L] Her attorney then filed a Motion for a New Trial; however, after a hearing convened on December 17, 2001, the motion was denied. She faults her attorney for not investigating and questioning all of the jurors. She claims that the refusal to allow the jurors a "smoke break" following their lunch during deliberation created an extraneous influence on the jurors which resulted in the guilty verdict. [Exhibit S, pp. 26-28]

In Claim V petitioner argued that she was denied effective assistance of appellate counsel when her court appointed appeal counsel argued some, but not all of petitioner's Assignments of Error in the writ application filed in the Louisiana Supreme Court. [id., p. 29]

In Claim VI petitioner argued that the "...State did not reveal all the exculpatory material that should have been provided..." Petitioner did not identify this allegedly exculpatory evidence, but merely claimed that certain witness statements and crime scene photos and the 911 transcript were not located in the District Attorney's file which she obtained through a public records request. [id., p. 30]

In Claim VII petitioner claimed that she was denied her right to due process when the state introduced prejudicial "other crimes evidence."

In Claim VIII petitioner argued that she was denied the right to effective assistance of appeal counsel and judicial review because the record on appeal was incomplete. [id. pp. 31-37]

Finally, in Claim IX petitioner argued that the cumulation of errors rendered the verdict unreliable. [id., pp. 38-39]

On June 17, 2005, writs were denied. *State ex rel. Jennifer Quiambao v. State of Louisiana*, 2004-2534 (La. 6/17/2005), 904 So.2d 692. [Exhibit T]

### 5. Federal *Habeas Corpus*

As shown above, petitioner filed her federal *habeas corpus* writ on June 24, 2005, raising eleven claims for relief:

> Claim I – Petitioner was denied equal protection of the law ... based upon the intentional discriminatory system of selecting the Ouachita Parish Grand Jury Foreperson. [Doc. 1-2, pp. 17-29]
> Claim II – Petitioner was constructively denied her ... right to effective assistance of counsel ... when she was denied representation in her defense by qualified counsel during the time that the indictment proceedings were held in regards to the charged lodged against her by the State of Louisiana. [Doc. 1-2, pp. 30-31]
> Claim III – Petitioner was denied the effective assistance of counsel and denied her right to a fair trial and her right to due process of law ... [Doc. 1-2, pp. 32-42]

Claim IV – Petitioner was denied the effective assistance of counsel and denied her right to due process, to confront and cross-examine witnesses and to a fair trial by a fair an impartial jury ... [Doc. 1-2, pp. 43-46]
Claim V – Petitioner was denied the right to effective assistance of counsel on appeal... [Doc. 1-2, pp. 47-48]
Claim VI – The State did not reveal all the exculpatory material that should have been provided to the defense... [Doc. 1-2, p. 49]
Claim VII – Petitioner was denied her right to due process and to a fair trial ... [Doc; 1-2, pp. 50-52]
Claim VIII – Petitioner was denied her rights to effective assistance of appellate counsel, judicial review, due process, and appropriate punishment due to the incompleteness of the record on appeal. [Doc. 1-2, pp. 53-55]
Claim IX – The trial court committed reversible error in admitting evidence of other crimes under L.C.E. article 404(B) in this involuntary manslaughter case in which specific intent is not an element of the offense. [Doc. 1-2, pp. 56-60]
Claim X – Petitioner was denied her right to due process ... as there was insufficient evidence to support the verdict of guilty as charged. [Doc. 1-2, pp. 61-68]
Claim XI – The cumulation of errors in this case renders the conviction constitutionally unreliable. [Doc. 1-2, pp. 69 *et seq*.]

## LAW AND ANALYSIS

### 1. Procedural Default – Claim I (Grand Jury Problems)

The procedural default doctrine bars federal *habeas corpus* review when a state court declines to address a petitioner's federal claims because the petitioner has failed to follow a state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991). "[I]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal *habeas* review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider

9

the claims will result in a fundamental miscarriage of justice." *Id.* at 750-51. This doctrine ensures that federal courts give proper respect to state procedural rules. *Id.*

Furthermore, the doctrine presumes that a state court's express reliance on a procedural bar functions as an independent and adequate ground in support of the judgment. *Sones v. Hargettt*, 61 F.3d 410, 416 (5th Cir. 1996). However, a petitioner can rebut this presumption by establishing that the procedural rule is not strictly or regularly followed. *Moore v. Roberts*, 83 F.3d 699 (5th Cir. 1996). The burden is on the petitioner to show that a state did not strictly and regularly follow the procedural bar at the time pertinent to his state court action. *Stokes v. Anderson*, 123 F.3d 840, 843 (5th Cir. 1999); *Amos v. Scott*, 61 F.3d 333, 342, (5th Cir. 1995); *Sones*, 61 F.3d at 416. In bearing the burden, the petitioner must demonstrate that the state failed to apply the procedural bar to claims which are identical or similar to the claims raised by him. *Stokes*, 123 F.3d at 860; *Amos*, 61 F.3d at 340.

The Second Circuit Court of Appeals dismissed petitioner's grand jury claims[2] as procedurally defaulted stating, "The applicant acknowledges that, even if error was made in the formation of the grand jury or the issuing of the indictment in her case, such claims are waived unless a timely motion to quash is filed. La. C.Cr.P. arts. 531; 533; *State v. Hansbro*, 35,027 (La.

---

[2] Petitioner raised related claims in her writ application to the Second Circuit Court of Appeals which were designated Assignments of Error Nos. 2, 2-A, and 2-B. [See Exhibit P, at pp. 10-22] These claims raised issues related to the selection of the Grand Jury which indicted her. The substance of these claims is set forth in Claims I and II of petitioner's federal *habeas* and are collectively referred to as Grand Jury claims. In Claim I petitioner contends that the discriminatory method employed to select the foreperson who presided over the Ouachita Parish Grand Jury at the time she was indicted denied her equal protection. In Claim II she argues that she was denied effective assistance of counsel when counsel was not appointed for her prior to and during the proceedings leading up to her indictment. With respect to Claim II, petitioner contends that the prejudice which resulted from this denial of counsel was her inability to timely contest the foreperson selection process. [See Doc. 1-2, pp. 17-29; 30-31]

App. 2d Cir. 9/26/01), 796 So.2d 185; *State v. Sims*, 32, 461 (La. App. 2d Cir. 10/27/99), 745 So.2d 151, *writ denied*, 1999-3384 (La. 5/12/00), 762 So.2d 11." [See *State of Louisiana v. Jennifer Denise Quiambao*, 39237-KH (La. App. 2d Cir. 8/12/2004); Exhibit Q]

Under Louisiana law, a challenge to the legality of the grand jury venire must be made by a pretrial motion to quash. La.C.Cr.P. art. 533 provides (in relevant part): "A motion to quash an indictment by a grand jury may also be based on one or more of the following grounds: (1) The manner of selection of the general venire, the grand jury venire, or the grand jury was illegal." Art. 521 provides (in relevant part): "Pretrial motions shall be made or filed within fifteen days after arraignment [unless other provisions of law or the court allows otherwise for good cause]." Art. 535 provides (in relevant part): "A motion to quash on grounds other than those stated in Paragraphs A and B of this Article [which do not include challenges to the grand jury] shall be filed in accordance with Article 521... The grounds for a motion to quash under Paragraphs B and C are waived unless a motion to quash is filed in conformity with those provisions."

The United States Fifth Circuit Court of Appeals has recognized that a state court's dismissal of a post-conviction claim based upon the above cited statutes provides an "adequate and independent" state law ground prohibiting federal *habeas* review unless the federal *habeas* petitioner demonstrates both cause for the procedural default and actual prejudice resulting from the violation of federal law. *Williams v. Cain*, 125 F.3d 269, 276 (5th Cir. 1997).[3]

---

[3] "It is undisputed that Williams never filed a pretrial motion to quash, let alone a timely motion. Williams raised his claim based on the selection of the grand jury foreman for the first time during his state post-conviction proceedings. Therefore, under Louisiana law his claim is procedurally barred. *Deloch v. Whitley*, 684 So.2d 349, 350 (La.1996) (holding equal protection claim based upon discriminatory selection of grand jury foreman procedurally barred by defendant's failure to file a pretrial motion to quash)." *Williams v. Cain*, 125 F.3d 269 at 275.

When a state prisoner has defaulted on his federal claims in the state courts pursuant to an independent and adequate state procedural rule, he can avoid the bar of procedural default only if he can show (1) a miscarriage of justice exists (i.e. actual innocence), *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), or (2) "cause for the noncompliance" with state law and "actual prejudice resulting from the alleged constitutional violation." *Coleman*, 501 U.S. at 750 (*quoting, Wainwright v. Sykes*, 433 U.S. 74, 84, 97 S.Ct 2497, 2505, 53 L.Ed. 2d 594 (1972)).

In order for a *habeas* petitioner to avoid a procedural bar by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 478. *Corwin v. Johnson* 150 F.3d 467, 473 (5th Cir. 1998); *Glover v. Cain*, 128 F.3d 900, 904 (5th Cir. 1997); *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995). To support such an exception, the petitioner must allege that as a factual matter she did not commit the crime of which she has been convicted. *Corwin*, 150 F.3d at 473; *Ward*, 53 F.3d at 108.

Furthermore, in order for a *habeas* petitioner to avoid procedural bar by showing cause and prejudice, the petitioner must show that "some objective factor external to the defense" prevented the petitioner from properly raising the claim in state court. *McClesky v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)(quoting, *Murray*, 477 U.S. at 488).

A defendant may show "cause" by proving ineffective assistance of counsel in violation of the Sixth Amendment of the Constitution. See *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). But petitioner is reminded, "In addition to cause, [she] must show actual prejudice to overcome the procedural bar." *United States v. Guerra*, 94 F.3d 989,

994 (5th Cir.1996) (internal quotations omitted). "The movant makes this showing where he demonstrates that, but for the error, he might not have been convicted." *Id.* See *Pickney v. Cain,* 347 F.3d 542, 545 (5th Cir. 2003).

Further, petitioner is reminded that in order to show that a failure to consider these claims will result in a "fundamental miscarriage of justice" she must show, "... as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635 (5th Cir.1999) (citing *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995). To establish such actual innocence, petitioner must "support his allegations with new, reliable evidence that was not presented at trial and must show that it was 'more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)).

Ordinarily, upon identifying a procedurally defaulted claim, a petitioner would be directed to amend her pleadings to show that the procedural default is not appropriate by showing "cause and prejudice" or a "miscarriage of justice."

Petitioner asserts her actual innocence. She admits that she killed her victim but claims that the homicide was done in self-defense. Nevertheless, petitioner has failed to provide any "...new, reliable evidence that was not presented at trial ... [which demonstrates] that it was 'more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Fairman v. Anderson, supra.*

Further, there is no need to engage in a cause/prejudice analysis since the record itself establishes beyond any doubt that petitioner was not prejudiced by any irregularities with respect to the selection or composition of the Grand Jury.

The Ouachita Parish Grand Jury returned a True Bill charging petitioner with Manslaughter. Louisiana law did not, nor does it now, require a grand jury indictment to institute prosecution for this offense. See La. R.S. 14:31(b), Manslaughter is not an offense punishable by death or life imprisonment. La. C.Cr.P. art. 382 provides, "A prosecution for an offense, punishable by death, or for an offense punishable by life imprisonment, shall be instituted by indictment by a grand jury. <u>Other criminal prosecutions in a district court shall be instituted by indictment or by information</u>."

In other words, even if petitioner could show "cause" for her default of the Grand Jury claims, she cannot show prejudice as a result of the alleged improprieties associated with the Ouachita Parish Grand Jury which indicted her. Had a timely Motion to Quash been filed and granted, the District Attorney could have simply instituted prosecution by way of a Bill of Information. Compare *Pickney v. Cain,* 337 F.3d 542, 545 (5th Cir. 2003).

The United States Constitution not only does not require that state prosecutions be on grand jury indictment, but also does not require that such prosecutions be on the basis of any neutral, third-party probable cause determination. *Gerstein v. Pugh*, 420 U.S. 103, 119, 125 n. 26, 95 S.Ct. 854, 869 n. 26, 43 L.Ed.2d 54 (1975).

2. Claim II – Ineffective Assistance of Counsel (Grand Jury Claims)

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides for prompt review and examination of habeas petitions by the court and further states, "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." Citing *Allen v. Perini*, 424 F.2d 134,

141 (6th Cir. 1970), the Advisory Committee Notes following Rule 4 state, "...under § 2243 it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer."

With respect to Claim II, petitioner argues that she was deprived of court-appointed counsel during the period when the Grand Jury convened and returned its indictment. She articulates the prejudice resulted from this deprivation as follows, "...this action by the State, in not affording her legal representation during the indictment process also caused prejudice to her because counsel was not able to avail himself of the procedural protections whereby a Motion to Quash the indictment lodged against her would have been properly filed ..."[4]

Again, petitioner cannot demonstrate prejudice. As shown above, petitioner was indicted for the offense of manslaughter, an offense which may be charged via Bill of Information. Had counsel filed a timely motion, the State would have surely instituted prosecution by filing a Bill of Information.

Any problems in the grand jury foreperson selection process in petitioner's case were surely harmless at best. Had the petitioner's indictment been quashed for the reasons asserted (or for any other reason), then the District Attorney could simply have instituted prosecution via a Bill of Information. Compare *Pickney v. Cain,* 337 F.3d 542, 545 (5th Cir. 2003).

In short, Claim I should be dismissed as procedurally defaulted. Claim II should be dismissed in accordance with Rule 4 inasmuch as the pleadings themselves establish that

---

[4] As noted elsewhere by petitioner, in order to prevail on an ineffective assistance of counsel claim, a federal habeas petitioner must show not only deficient performance, but also prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The habeas petitioner makes this showing when she demonstrates that, <u>but for</u> the error, she might not have been convicted.

petitioner is not entitled to relief.

### 3. Exhaustion of State Court Remedies – Claim X

It appears that the substance of the claims raised by petitioner in Claims III, IV, V, VI, VII, VIII, IX and XI have been exhausted. Claims VII and IX raise the issue of "other crimes evidence" and were argued on direct appeal to the Second Circuit Court of Appeals, and thereafter were argued to the Louisiana Supreme Court in petitioner's writ application on direct review. [See Exhibit H, p. 6] Claims III, IV, V, VI, VIII, and XI were raised in petitioner's post-conviction process.

Claim X raises the issue of sufficiency of the evidence. Petitioner raised this claim on direct appeal to the Second Circuit; however, it was not raised in the writ application filed in the Louisiana Supreme Court. [See Exhibit H] Claim X thus remains unexhausted since the highest court in Louisiana has not yet had a chance to rule on it. Further, it is unlikely that petitioner could now exhaust this claim in the State courts since the limitations period for filing post-conviction have now expired. [See La. C.Cr.P. art. 930.8 which provides for a two year period of limitations reckoned from the date of finality of judgment. Petitioner's judgment of conviction and sentence became final under Louisiana law when the Louisiana Supreme Court rejected her application for writs on direct review on May 16, 2003. Any further attempt to litigate this claim would be futile.]

Petitioner's sufficiency of the evidence claim is thus "technically defaulted" but now "procedurally barred." In order to obtain federal *habeas corpus* review of this now procedurally defaulted claim, petitioner must demonstrate "cause and prejudice" or "actual innocence." See *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991)

("[I]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal *habeas* review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750-51)

Petitioner claimed that ineffective assistance of counsel was the cause of this procedural default in her State Post-Conviction Proceedings. [See Exhibit M, Claim V] She was therefore aware of this deficiency when she filed her Application for Post-Conviction Relief, yet she did not raise the substantive issue of sufficiency of evidence in her post-conviction pleadings. Clearly then, the failure of the Louisiana Supreme Court to address this issue may fairly be attributable to the petitioner and not to attorney error. This Claim should therefore be dismissed as unexhausted.

Accordingly, **IT IS RECOMMENDED** that **Claim I** (Racial Discrimination in the Selection of Grand Jury Foreperson) of the instant petition for *habeas corpus* be **DENIED AND DISMISSED WITH PREJUDICE** as procedurally defaulted;

**IT IS FURTHER RECOMMENDED** that **Claim II** (Ineffective Assistance of Counsel) of the instant petition for *habeas corpus* be **DENIED AND DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts since it plainly appears from the face of the petition and exhibits annexed to it that the petitioner is not entitled to relief;

**IT IS FURTHER RECOMMENDED** that **Claim X** (Sufficiency of the Evidence) be **DENIED AND DISMISSED WITH PREJUDICE** because petitioner failed to avail herself of

all available state court remedies.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 27th day of October, 2005.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE